IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LONE STAR-CARDINAL MOTORCYCLE VENTURES VIII, LLC and LONE STAR-CARDINAL MOTORCYCLE VENTURES X, LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 16 C 02102 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| BFC WORLDWIDE HOLDINGS, INC., BFC PROPERTIES, LLC, and CHARLES HASTINGS, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The parties—Lone Star and BFC (including Charles Hastings), for short— entered into an Asset Purchase Agreement and a Real Estate Purchase Agreement (together, the "agreement" or "contract") to accomplish the sale of BFC's Harley Davidson motorcycle dealership and most of its assets. The deal went bad, and Lone Star invoked the contract's termination provision. It soon pivoted to trying to force the sale; when BFC refused, Lone Star brought this lawsuit. BFC now moves for judgment on the pleadings on Count One of the complaint, which seeks specific performance of the contract as a remedy for BFC's alleged defaults. Because specific performance cannot be awarded as a matter of law, the motion is granted.

# FACTS[1]

After the parties agreed to terms, Lone Star, the buyer, placed $100,000 in escrow as earnest money, and the parties embarked on their due diligence. The due diligence period was extended to December 14, 2015, by agreement of the parties. Before December 14, Lone Star learned that the dealership property was subject to a mortgage with over $4 million outstanding, and based on the BFC's financial disclosures, Lone Star foresaw a substantial shortfall under the contract at closing with no conceivable way for BFC to pay it. Further, Lone Star learned that BFC had failed to renew a special use permit that was a precondition to the operation of a motorcycle dealership (BFC denies this, but the dispute is not material to this motion.)

Therefore, on December 14, 2015, Lone Star requested a further extension of the due-diligence period to January 14, 2016 and some other amendments to the agreement pertaining to BFC's financial disclosures. Lone Star requested a response from BFC no later than 4:50 p.m. that day. It further stated: "In the event that you do not agree to the foregoing amendments, then effective as of 4:50 p.m. CST today, December 14, 2015, this notice shall be deemed to be Buyer's election to terminate the Purchase Agreement pursuant to the provisions of Section 11.1(a)(ii)(B) thereof and the Purchase Agreement shall thereafter have no further force and effect and the earnest money will need to be returned to Buyer." A separate letter made the same statement as to the Real Estate Purchase Agreement, invoking Section 2.2 of that contract. According to the Complaint, the plaintiff was "forced" to invoke the termination provisions because the Due Diligence period was set to expire on December 14, 2015, and plaintiff was at

---

[1] The facts are derived from the complaint, answer, and exhibits, which are incorporated into the pleadings for all purposes. Fed. R. Civ. P. 10(c); *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The factual allegations of the complaint are taken as true and viewed in the light most favorable to the plaintiff, the non-moving party here. *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013).

risk of losing its earnest money and having to accept the property without a legal special use. Compl. ¶ 20, ECF No. 1-1.

Section 11.1(a)(ii)(B) of the Asset Purchase Agreement provides that the Buyer may unilaterally terminate the contract by written notice if "Buyer determines that (1) the results of its due diligence review of the Business are not satisfactory to Buyer or (2) Buyer is unable to obtain a satisfactory commitment from its Lender for the financing of the transaction." Section 2.2 of the Real Estate Purchase Agreement provides in relevant part: "Notwithstanding anything to the contrary in this Agreement, Buyer may terminate this Agreement [by] giving notice of termination to Seller (the 'Due Diligence Termination Notice') on or before the last day of the Due Diligence Period . . . . If this Agreement terminates pursuant to this Paragraph 2.2, the Earnest Money shall be refunded to Buyer immediately upon request, and all further rights and obligations of the parties under this Agreement shall terminate, except for any indemnity obligation of Buyer." The Real Estate Purchase Agreement also contains a "Seller' Default" provision, Section 8.1, which states: "If this transaction fails to close as a result of Seller's default, the Earnest Money shall be returned to Buyer. In addition, Buyer shall be entitled to such remedies for breach of contract as may be available in equity, including without limitation, the remedy of specific performance, and at law."

BFC did not respond to the letters on December 14, 2015. The following day, Lone Star sent BFC a letter stating that "in accordance with the notice of termination served upon you on December 14, 2015 as a result of the Sellers [sic] breach [], the Earnest Money . . . will be released to the Buyer." It further stated that Lone Star reserved all rights in connection with BFC's breach of the agreement and that Lone Star "intends to act vigorously to protect [its] rights and will seek specific performance as well as the recovery of all damages and costs and

expenses incurred in the pursuit thereof." And, the next day, Lone Star sent BFC another letter, stating that Lone Star remained "ready, willing, able and fully prepared to consummate the transactions" and that it would "be forced to commence legal proceeding[s] immediately" if it did not receive BFC's satisfactory assurances before 5 p.m. on December 18, 2015. In an email on December 18, counsel for BFC indicated that the agreements had been terminated and that the subsequent letters "do not revive the contract"; however, BFC would entertain a new offer. Lone Star filed suit on December 21, 2015.

Counts One and Two of Lone Star's "Complaint for Specific Performance and Other Relief" allege that BFC breached the agreement by, among other things, failing to timely provide all requisite financial disclosures, failing to renew the dealership's special use permit, and shopping around Lone Star's offer to obtain more favorable sale terms from other buyers. Compl. ¶¶ 35-47, ECF No. 1-1. In Count One, Lone Star requests specific performance of the contract "in spite of the termination." *Id*. ¶ 49. In Count Two, Lone Star alternatively requests damages in excess of $100,000 for BFC's refusal to close the transaction. *Id*. ¶¶ 54-57. BFC now moves for partial judgment on the pleadings on Count One.

## DISCUSSION

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). Therefore, this Court takes all well-pleaded allegations as true and draws all reasonable inferences in favor of the non-moving party, Lone-Star, in determining whether the complaint sets forth facts sufficient to support relief under a cognizable legal theory. *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013).

BFC contends that Lone Star is not entitled to the relief requested in Count One because, as a matter of law, Lone Star cannot seek specific performance of a contract that it properly terminated. Lone Star, in response, argues that a "carve out provision" of the contract gives it the right to seek specific performance notwithstanding the termination; alternatively, it contends that that its December 14 letter was merely a repudiation, which it quickly retracted. BFC retorts that the contract's plain terms do not allow that result and that is "conceptually impossible to specifically perform a terminated contract." It further disputes that Lone Star's express termination can be recast as repudiation.

BFC is on solid ground with respect to general principles of contract. (Wisconsin law governs here, by the parties' agreement, though neither party suggests that choice of law makes any difference on this question.) Specific performance is an equitable remedy that seeks to award performance of the contract as specifically agreed—to order the breaching party to do that which it agreed to do. *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2010 WI 44, ¶ 36, 783 N.W.2d 294, 303 (2010). By definition then, specific performance requires there to be a contract to enforce. *See JNS Power & Control Sys., Inc. v. 350 Green, LLC*, 624 F. App'x 439, 445 (7th Cir. 2015). ("To state a cause of action for specific performance, there must first be a valid, binding, and enforceable contract."); *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 984 F.2d 223, 229 (7th Cir. 1993) (explaining, of damages and specific performance, that "both remedies depend upon an affirmance of the contract"). Indeed, the "first requirement" in an action for specific performance is the existence of a valid, legally enforceable contract. *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2014 WI App 87, ¶ 20, 853 N.W.2d 618, 625 (2014) (quoting 25 Samuel Williston, A Treatise on the Law of Contracts § 67:2 (4th ed. 2002)).

It is clear in other contexts that a party may not simultaneously disavow a contract and seek to enforce it. For example, when a contract is breached, the injured party can elect rescission and restitution, or it may seek damages, but not both. *See Galatowitsch v. Wanat*, 2000 WI App 236, ¶ 21, 620 N.W.2d 618, 624 (Wis. Ct. App. 2000) ("an action on a contract for breach and an action to rescind a contract . . . are inconsistent because the former stands on the contract and the latter seeks to set it aside"). Termination, like rescission, extinguishes the parties' remaining obligations, such that there is nothing to perform, making specific performance entirely inconsistent with the self-help termination remedy under the contract. Therefore, at common law "the rule is that where one party commits a material breach, the non-breaching party may elect to terminate the entire agreement *or* seek to enforce the remainder of the contract." *United States v. Hallahan*, 756 F.3d 962, 973 (7th Cir. 2014).

Lone Star does not appear to take issue with the general principle that a terminated contract cannot be specifically performed. Instead, it argues that, even so, the contract gave it the express right to seek specific performance despite a termination. It does no such thing.

Under Wisconsin law, this Court interprets a contract to give effect to the parties' intentions. *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶¶ 25-28, 833 N.W.2d 586, 592 (2013). But the parties' subjective intent is not "the be-all and end-all"; rather, "unambiguous contract language" is controlling. *Id*. If the terms of a contract are clear and unambiguous, it is construed according to its literal terms. *Id*. Here, there is no ambiguity in the contractual language;[2] therefore, the Court simply applies the terms of the contract as written.

---

[2] Therefore, extrinsic evidence of the parties' intent is not called for, *see id.*, and the Court does not consider the affidavits submitted by Lone Star that comment on the purpose and meaning of the contractual provisions. In any case, this Court could not consider matters outside the pleadings on a motion under Rule 12(c) without converting it to a summary-judgment motion, and the plaintiffs' extrinsic evidence (Exhibits B and C to its response brief) must be

The termination provision says nothing about specific performance. Nevertheless, Lone Star contends that Subsection (B) of Section 11.1(b)(ii) of the APA, is a "carve out provision" that preserves "the right to pursue specific performance in the event that the termination resulted from BFC's breach." Mem. 9, ECF No. 45. That provision states that, if the contract is terminated by the buyer due to the seller's defaults, "no party hereto shall have any liability or further obligation to any other party to this Agreement resulting from such termination except. . . no party waives any claim or right against a breaching party to the extent that such termination results from the breach by a party hereto of any of its representation, warranties, covenants, or agreements." This unremarkable provision does not "carve out" a specific performance remedy. It simply says that upon termination the injured party can pursue its remedies against the breaching party; the remedies are not prescribed.

Second, the one provision that does refer to specific performance is the Seller's Default provision of the Real Estate Purchase Agreement, which mentions "specific performance" as a remedy for default, but says nothing about termination. Section 8.1 provides: "If this transaction fails to close as a result of Seller's default . . . , Buyer shall be entitled to such remedies for breach of contract as may be available in equity, including without limitation, the remedy of specific performance, and at law." This provision says nothing that the common law would not already provide—namely, that the injured party may sue the breaching party for appropriate remedies. Specific performance is an available remedy in the event of the seller's *default*, but nothing in this provision suggests that Lone Star remains "entitled" to that remedy *after terminating the contract*. Lone Star expressly exercised the termination provisions in Section

---

excluded on that basis. *See* Fed. R. Civ. P. 12(d); *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008).

11.1(a)(ii)(B) of the Asset Purchase Agreement and Section 2.2 of the Real Estate Purchase Agreement. Whatever Lone Star's intention, this was, in effect, an election not to pursue specific performance but to cancel the contract altogether. Lone Star retains its rights to sue for available remedies, but those do not include specific performance.

If Lone Star believed BFC to be in material default, it had the express option to sue for specific performance to enforce BFC's compliance with the terms of the contract. *See Beidel v. Sideline Software, Inc.*, 2013 WI 56, ¶ 26, 842 N.W.2d 240, 249 (2013) (Specific performance is a remedy for breach by non-performance or repudiation). Alternatively, Lone Star had the unilateral right to terminate based on BFC's defaults (assumed to be true for purposes of this motion). And under the contract it reserved the right to recoup any losses through legal action. *See generally Merry Gentleman, LLC v. George & Leona Prods., Inc.*, 799 F.3d 827, 830 (7th Cir. 2015) (explaining that when one party fails to perform, "it is appropriate for the injured party to claim as damages all expenditures it made in preparation for performance because the other side failed to perform"). But terminating *and* suing for specific performance is not authorized by the agreement, contract law, or common sense. Wisconsin courts have repeatedly held that when a contract authorizes various forms of relief, the injured party cannot help itself to all of them. *See generally Osborn v. Dennison*, 2009 WI 72, ¶ 50, 318 Wis. 2d 716, 737, 768 N.W.2d 20, 31 (2009) (seller could not retain earnest money and sue for actual damages); *Zimmermann v. Thompson*, 16 Wis. 2d 74, 78, 114 N.W.2d 116, 118 (1962). Although this is not an issue of double recovery, a similar principle is at work here; the unilateral termination provision was a contractual remedy for the seller's default. Lone Star exercised it and thereby preserved its earnest money without incurring any litigation costs. But the cost of terminating the contract is forfeiture of the remedy of specific performance. Contrary to Lone Star's argument,

the plain language of the contract does not permit it to sue for specific performance "in spite of termination."

Lone Star next raises the somewhat contradictory argument that it did not really terminate—that it "retracted the termination in less than 24 hours and prior to BFC materially changing its position or giving Lone Star notice that it accepted the termination." Mem. 9, ECF No. 45. In support of this argument, Lone Star recharacterizes its express termination of the contract as a mere "repudiation," which can be retracted under certain circumstances.

Repudiation is "a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach" or "a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." Restatement (Second) of Contracts § 250 (1981). In other words, a repudiation is a communication by word or deed that one will not perform; it is therefore a type of breach. *See Menako v. Kassien*, 265 Wis. 269, 273, 61 N.W.2d 332, 335 (1953). The idea that Lone Star itself was committing a breach that would, in turn, relieve BFC from performing is anathema to the entire theory of the Complaint—namely, that *BFC* was in default for numerous reasons, such that Lone Star's rights to sue for specific performance, or to invoke the termination provisions, were triggered.

Moreover, the repudiation theory is foreclosed because Lone Star admits that it terminated the contract. Its references in the Complaint to its termination of the contract, "forced" or otherwise, are judicial admissions that it cannot now contradict. *See Help At Home Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001) (statements in complaint are binding judicial admissions unless superseded). Lone Star's complaint admits that its letter of December 14, 2015, stated that the agreements would terminate by close of business that day

9

unless BFC agreed to extend the due diligence period, and that BFC did not respond. Compl. ¶ 20, ECF No. 1-1. It alleges that that it had the right to terminate under the contract, that it was "forced to terminate" to protect its rights, and that it "properly did so." *Id*. ¶¶ 30-32, 34, 37, 48. Furthermore, Lone Star's letter on December 15, 2015, which is incorporated into the Complaint, refers to the December 14 letter as a "notice of termination." Compl. Ex. 5, ECF No. 1-1.

Lone Star's new allegation that it breached by the contract by repudiating it, but then retracted the repudiation, is wholly inconsistent with the allegations in its complaint that it properly exercised its termination rights under the agreement. As a case progresses, a plaintiff may add legal theories, which need not be pled in the complaint, but the plaintiff is not entitled to change the facts in response to a motion to dismiss. Facts alleged by a plaintiff in a brief in opposition to a motion to dismiss may be considered, but only if they are consistent with the allegations in the complaint. *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015). Lone Star's "repudiation" cannot be reconciled with its allegations of termination, so an amendment to the complaint would be necessary to set forth a different version of events. But there is an "axiomatic rule that a plaintiff may not amend his complaint in his response brief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011); *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (A "new claim" "cannot be raised in a brief in opposition to a motion to dismiss; it must be pleaded in a new or amended complaint"). Therefore, the argument that BFC was obligated to continue performance based on a retracted repudiation by Lone Star fails to get out of the gate.

Finally, Lone Star's appeal to equitable principles is irrelevant. *See* Mem. 14-15, ECF No. 45. Under Wisconsin law, the requirements for obtaining specific performance are "that specific performance is available as a remedy"; "that there has been a substantial enough breach

to warrant specific performance"; and "that the equities lie on [the plaintiff's] side, and that nothing would make an order of specific performance unfair, unreasonable or impossible." *Beidel,* 842 N.W.2d at 245-46. "The threshold question is whether specific performance is available." *Id.* at 249. Lone Star suggests that the equities alone require a specific performance remedy. But principles of equity dictate whether a court *should* impose specific performance once its availability as a remedy and the existence of a material breach have been established. *See Ash Park, LLC*, 783 N.W.2d at 303. They do not answer the threshold question of whether specific performance is an available remedy under the law. Because neither the contracts nor common law provide for such a remedy *after termination*, there is no occasion to reach the question of the balance of the equities. Lone Star also suggests that specific performance must be available because BFC should not be able to benefit from its breaches of contract. But, to the extent that BFC is effectively released from the sale, it is only because of Lone Star's own decision to elect termination. Nothing prevented Lone Star from filing suit to enforce the contract or obtain damages if, as it maintains, BFC was in material breach. Termination was not precondition to suit. But having elected to terminate, Lone Star is now limited to seeking remedies that are consistent with that action.

Date: July 11, 2016

John J. Tharp, Jr.
United States District Judge