# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LONE STAR-CARDINAL MOTORCYCLE VENTURES VIII, LLC and LONE STAR-CARDINAL MOTORCYCLE VENTURES X, LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | No. 16 C 02102 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| BFC WORLDWIDE HOLDINGS, INC., BFC PROPERTIES, LLC, and CHARLES HASTINGS, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

As previously summarized, the parties—Lone Star and BFC (including Charles Hastings), for short—entered into an Asset Purchase Agreement and a Real Estate Purchase Agreement (together, the "agreement" or "contract") to accomplish the sale of BFC's Harley Davidson motorcycle dealership and most of its assets. The deal faltered when BFC allegedly did not live up to its promises, and Lone Star invoked the contract's termination provision. Notwithstanding the termination, Lone Star soon threatened legal action if BFC did not complete the sale; when BFC refused, Lone Star brought this lawsuit. BFC moved for judgment on the pleadings on Count One of the complaint, which seeks specific performance of the contract. See Mot., ECF No. 33. This Court granted the motion, concluding as a matter of law that specific performance cannot be awarded in view of Lone Star's termination of the contract. See Mem. Op. & Order, ECF No. 49. Now, Lone Star moves for reconsideration of that decision and for leave to amend its complaint to, in short, scrub its references to termination and amend its legal theory to assert that no termination could have been accomplished without it having received its

earnest money back and without BFC showing that it detrimentally relied on the notice; Lone Star further argues that it affirmed the contract and therefore nullified any termination. See Mot., ECF No. 50 & Proposed Amended Complaint, ECF No. 50-3.

The Court assumes familiarity with the facts set forth in the original complaint (at which the motion for judgment on the pleadings and motion to reconsider are directed), as summarized in its prior opinion.[1] See Mem. Order & Op. 2-4, ECF No. 49. The premise of BFC's Rule 12(c) motion was that as a matter of law, Lone Star could not obtain specific performance of a contract that it had previously terminated (Lone Star's complaint and exhibits together admitted the termination). Lone Star argued in response that a "carve out provision" of the contract gives it the right to seek specific performance notwithstanding a termination; alternatively, it argued that that its termination letters simply repudiated the contract, and that it had subsequently retracted the repudiation. This Court ruled that Lone Star pled that it had terminated the contract, and that because it terminated, it could not compel specific performance. The Court also held that the contractual carve-out provisions Lone Star invoked did not preserve a right of specific performance after termination, that the complaint did not allege a "repudiation" by Lone Star that it could have retracted, and that this allegation, which did not appear in the complaint and was added only in Lone Star's brief in response to the motion, was inconsistent with the original complaint.

A district court has discretion to reconsider an interlocutory judgment or order at any time prior to final judgment. *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015); *Peirick*

---

[1] The Court relied on the complaint and its exhibits including the contracts and the parties' correspondence, which are incorporated into the pleadings for all purposes (Fed. R. Civ. P. 10(c); *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998)). The factual allegations of the complaint were taken as true and viewed in the light most favorable to Lone Star. *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013).

*v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 694 (7th Cir. 2007) (district court entitled to reconsider its initial denial of summary judgment, because the denial of summary judgment was interlocutory order that district court had broad authority to reconsider). But "[t]he authority of a district judge to reconsider a previous ruling in the same litigation . . . is governed by the doctrine of the law of the case, which authorizes such reconsideration if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571–72 (7th Cir. 2006).

Although styled as a motion for reconsideration, most of Lone Star's arguments are not based on the rulings made as to it its original complaint and the arguments Lone Star presented in opposition to the Rule 12(c) motion;[2] instead, in arguing that it is entitled to seek specific performance, it changes its legal theories based upon a proposed amended complaint, which it requests leave to file. In other words, Lone Star really doesn't want this Court to "reconsider" what it held as to the first complaint. It wants to leave the first complaint behind and change its allegations so that it can proceed upon a new legal theory that is inconsistent with its prior allegations. The combination of the motion to reconsider and motion for leave to amend has led to a confusing morass of arguments, some tied to the original complaint and others tied to the proposed amended complaint. This procedural maneuver was ill-considered.[3]

---

[2] Perhaps that is why Lone Star never acknowledges the law of the case doctrine or the standard for reconsidering an interlocutory ruling.

[3] Lone Star, citing *Camp v. Gregory*, 67 F.3d 1286, 1289–90 (7th Cir. 1995), says that it was "obligated to seek reconsideration" because once final judgment has been entered, the district court lacks jurisdiction to entertain a motion for leave to amend the complaint unless the plaintiff also moves for relief from the judgment. Reply 2-3, ECF No. 65. But there was no "final judgment" in this case and no judgment to vacate; there was simply an interlocutory ruling on a motion for partial judgment on the pleadings. Nothing precluded Lone Star from seeking leave to amend; indeed, this Court noted when presented with arguments inconsistent with the original

In its motion for reconsideration, to the extent it actually addresses BFC's Rule 12(c) motion against the original complaint, Lone Star says, in essence, that the Court got its ruling all wrong (although it nowhere argues that "a change in, or clarification of," the law since occurred, or that any reason other than its disagreement with the Court's rulings necessitates reconsideration). It first argues that, contrary to the Court's understanding, it did not argue "that it can specifically enforce a terminated contract." Mem. 2, ECF No. 52; Reply 6, ECF No. 65. This argument can be quickly dispatched as revisionist history. Lone Star most certainly argued that under the contracts, a termination resulting from a default by BFC does not waive Lone Star's equitable or legal rights, including the right of specific performance (the subject of Count One). Mem. 8-12, ECF No. 45. Indeed, the heading of its first argument summarized its primary theory of relief as follows: "**The Express Terms Of The Agreement Allow Lone Star To Terminate In Order to Protect Its $100,000 In Earnest Money Then Sue For Specific Performance.**" *Id*. at 8. The argument that followed expanded on this premise. It is simply not tenable for Lone Star to suggest now that its prominent argument that it could specifically enforce a terminated contract was a figment of the Court's imagination.

Relatedly, Lone Star contends that the Court's "finding" that Lone Star canceled the contract was erroneous. That was not a "finding" by the Court; it was a description of Lone Star's own allegations in its pleading, including the exhibits to the Complaint. The facts alleged by the non-movant were taken to be true, as required, and that included the allegation (and

---

complaint's allegations that only amendment could permit the new theory. *See* Mem. Op. & Order 10, ECF No. 49 ("Lone Star's 'repudiation' cannot be reconciled with its allegations of termination, so an amendment to the complaint would be necessary to set forth a different version of events."). Such a motion might not have succeeded, as it does not here, but it certainly would have allowed for a cleaner presentation of Lone Star's arguments about why it should be permitted to seek specific performance. The Court cannot "reconsider" arguments that were never made because they are tied to allegations in a pleading that is not of record.

judicial admission[4]) that Lone Star expressly invoked the contract's termination provisions and exercised its termination rights. *See* Mem. Op. & Order 9-10, ECF No. 49. That Lone Star continued to assert in its original complaint that it had terminated the contract but was nevertheless entitled to the remedy of specific performance is at odds with its new position that it retracted its termination of the agreements or affirmed them post-termination.

Lone Star further argues (now) that as a matter of law, no termination occurred because it "never received any benefit from the termination." Mem. 4, ECF No. 52. There are at least two problems with this argument. First, Lone Star never made this argument in opposition to the Rule 12(c) motion. Again, it argued only: (1) that under the contract it could terminate and then seek specific performance; and (2) alternatively, that it had repudiated the contract and then retracted the repudiation, allowing it to seek specific performance. A motion to reconsider is not a vehicle for raising arguments that could have been made the first time. Arguments that are raised for the first time in in support of a motion for reconsideration are generally deemed to be waived. *Mungo v. Taylor*, 355 F.3d 969, 978 (7th Cir. 2004); *Johnson v. Orkin, LLC*, 556 F. App'x 543, 545 (7th Cir. 2014). In responding to the Rule 12(c) motion, Lone Star did not argue that "there was no termination because it never received any benefit," *i.e.*, the return of its escrow money, and the Court will not consider that argument for the first time on a motion to reconsider.

Second, the argument that Lone Star received "no benefit" from terminating the contract because its earnest money was not returned assumes that termination provided no other benefit. That argument is counter-intuitive and inconsistent with the allegations of both the original and

---

[4] Lone Star argues that its original allegations are only evidentiary, not judicial, admissions. *See generally Enquip, Inc. v. Smith-McDonald Corp.*, 655 F.2d 115, 118 (7th Cir.1981); *Slate Printing Co. v. Metro Envelope Co.*, 532 F. Supp. 431, 436 (N.D. Ill. 1982). This would be true if the original complaint were later superseded by an amended complaint. But the Court has not granted leave to amend.

proposed amended complaints, which allege that Lone Star terminated the agreements "to prevent from being bound to accept the Property without a legal Special Use [permit] as well as to protect the Earnest Money, Plaintiffs sent the Due Diligence Period Extension Request" and acknowledge that the "failure of Defendants to provide all of their Financial Disclosures to Plaintiffs . . . was a reason why Plaintiffs sent the Due Diligence Extension Request." Compl. ¶ 20, Mot. Ex. 1, ECF No. 50-1 & Prop. Am. Compl. ¶ 24, Mot. Ex. 3, ECF 50-3; Prop. Am. Compl. ¶ 42, Mot. Ex. 3, ECF 50-3. Having acknowledged these other reasons it terminated the agreements, Lone Star does not and cannot explain why the ability to avoid contractual liability without assurance that a special use permit had been granted, and without the benefit of full financial disclosure, and without losing its earnest money, were not "benefits" that Lone Star derived from terminating the deal.

Further, this argument is based upon facts outside the pleadings—the original complaint and exhibits. The only suggestion that Lone Star did not receive a benefit is in an affidavit of Lone Star's counsel, Stephen Ryd, which was attached to Lone-Star's response brief opposing the 12(c) motion. Ryd Aff. ¶ 30, ECF No. 45-2. In its response brief, Lone Star tried to rely on the attorney's affidavit to interpret the meaning of the contract. The Court rejected that approach, explaining that the contract language was unambiguous and, further, that it could not consider matters outside the pleadings on a motion under Rule 12(c) without converting it into a summary-judgment motion. Mem Op. & Order 6 n.2, ECF No. 49. The Court disregarded the plaintiffs' extrinsic evidence (Exhibits B and C to its response brief) for that reason. *See* Fed. R. Civ. P. 12(d); *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008). In its current motion to reconsider, Lone-Star again tries to sneak in the same extrinsic evidence (or alternatively to rely upon assertions in its as-yet unaccepted proposed amended complaint), to

support the proposition that it did not receive its earnest money and therefore did not effectively terminate the agreements. But no such allegation appears in pleadings under consideration. The same is true for Lone Start's argument that "specific performance is not inconsistent with the December 14 letters." Reply 4, ECF No. 65. In making this argument, Lone Star explicitly relies on the allegations in the "Proposed Pleading," which has nothing do with whether the original ruling requires reconsideration.

Lone Star also says that the Court misconstrued its alternative argument that it repudiated the contract then retracted the repudiation, requiring BFC to consummate the deal. Lone Star says that it made a "lawful repudiation," not one that was a breach of the contract, and therefore that a premise of the Court's ruling—that repudiated by Lone Star was inconsistent with its allegations that fully performed—was faulty. It further argues that it reaffirmed the contracts before any detrimental reliance by BFC, which negated any termination and allowed it to then seek specific performance. But all that is just to say that Lone Star's "repudiation" was justified by BCF's conduct, in which case it was no different than a justifiable unilateral termination under the terms of the agreements.[5] Whether one calls Lone Star's action a "repudiation" of the contract rather than a termination does not change the fact (based on Lone Star's allegations) that it was a justifiable unilateral act that ended the parties' ongoing contractual obligations to each

---

[5] Lone Star still fails to contend with the conclusion that its original pleadings alleged termination of the contract and not repudiation. See Mem Op. & Order 9-10, ECF No. 49. Indeed, in another piece of sleight-of-hand, it relies on the allegations in its proposed amended complaint rather than the one that was the subject of the motion for judgment on the pleadings in making this argument. However, it admits that in response to a dispositive motion, a party cannot contradict its pleadings. Reply 3, ECF No. 65. It is therefore not seeking "reconsideration" of the Court's holding to that effect; it is changing its argument based upon a proposed amended complaint rather the complaint as to which the motion, and the decision under reconsideration, were based.

other. As Lone Star's own letters stated, as of 4:50 p.m. on December 14, 2015, the agreements had "no further force and effect." Mot. Ex. 5, ECF No. 50-1.

Lone Star insists now that a termination, like repudiation, can be (and was) retracted. Mem. 6, ECF No. 52; Reply, 8-11, ECF No. 65. But once again, it never raised this argument in opposition to the Rule 12(c) motion (to the contrary, as the Court observed in its original opinion, Lone Star's lead argument originally was that it had both terminated the contract and preserved its right to seek specific performance). The present argument is not based upon any new law or facts pertinent to the *original* complaint; it is premised on the new proposed complaint. The argument therefore is waived as to the Court's reconsideration of its prior ruling. Only an amendment of the complaint—not "reconsideration"—could allow Lone Star to advance the argument that it terminated the contract but then retracted the termination.

Finally, Lone Star's contention that it did not "intend" to foreclose its right of specific performance when it sent termination notices that expressly invoked the termination provisions of the contracts, and therefore did not "effectuate[] an election of remedies," Mem. 8. ECF No. 52, is impenetrable. Its intent notwithstanding, according to its own original pleadings, Lone Star *did* terminate the contract. As the Court previously concluded, the contract does not permit the terminated agreement to be specifically performed even if Lone Star *believed* it had accomplished that marvel in drafting the agreements.

There is, then, no compelling justification to change the prior ruling on the motion for judgment on the pleadings. Lone Star does not cite any change in, or clarification of, law, and its new arguments could have been presented to the Court in its original response but were not, or otherwise are based upon a new pleading, not the complaint as to which reconsideration is requested. Beyond those arguments, Lone Star simply explains its disagreement with the Court's

8

ruling and rehashes (or rewords) issues already decided. *See Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) ("A motion that merely republishes the reasons that had failed to convince the tribunal in the first place gives the tribunal no reason to change its mind."). For example, Lone Star insists, contrary to this Court's ruling, that the contracts and its correspondence are not inconsistent with the remedy of specific performance. Its arguments to that effect, however, are either new (and therefore waived), or, again, based upon new allegations in a proposed amended complaint. Therefore, the motion to reconsider is denied.

Lone Star's arguments in the context of its proposed amended complaint fare no better. The sole argument (if it can be called that) for amendment that the Court could find in Lone Star's opening brief is:

> A valid termination never occurred, which could preclude specific performance. Lone Star therefore seeks leave to amend its pleading ***to also allege*[6]** that Lone Star never received the return of its earnest money and BFC never manifested any assent to the statement of disaffirmance in addition to the Complaint's allegation that BFC did not change positions after receiving the December 14th Letters to show that no termination of the contracts has occurred," that "Lone Star affirmed the contract prior, and that there was no election of remedies." [Mem. 4-5, 10 ECF No. 52.]

Despite Lone Star's new position that it retracted its termination and affirmed the agreement ,the proposed amended complaint contains no such factual allegations. Although Lone Star alleges (and the exhibits show) that post-termination, it communicated that it was "ready, willing, and able" to consummate, that unilateral act had no effect on its action that rendered each the contracts "with no force and effect." In other words, there was no agreement for the parties to perform. And even the proposed amended complaint does not allege that Lone Star *said or did*

---

[6] This amounts to a concession that, as the Court has noted, the original pleading contained no such allegations, including the assertion that Lone Star effectively reaffirmed the contract after terminating it.

9

anything to retract its termination of the agreement, rather than just pretend that the termination had not occurred. To the contrary, in Count One for specific performance, Lone Star continues to allege that under the termination provisions of the contracts, it "had the right to terminate . . . because the Due Diligence Period had not expired." Am. Compl. ¶¶ 36-37, ECF No. 50-3. It also continues to allege that under the contract, it had the right to specific performance if BFC defaulted, and that BFC indeed defaulted. *Id*. ¶¶ 38, 41-53. Rather than allege contrary facts, Lone Star simply omitted the allegations it had made in the original complaint acknowledging that the December 14, 2015 "Due Diligence Period Extension Request" terminated the agreement as of the close of business that day. *Compare* Original Complaint ¶ 20 *with* Proposed Amended Complaint ¶ 24.

But Lone Star can't change the facts by ignoring them; whether or not the new complaint expressly alleges that Lone Star terminated the agreement, Lone Star relies on its letters to BFC, and those exhibits make plain that Lone Star did, in fact, terminate the agreement. The exhibits control to the extent they are inconsistent with the plaintiff's allegations, *Massey v. Merrill Lynch & Co*., 464 F.3d 642, 645 (7th Cir. 2006). And they are. Both of Lone Star's December 14 letters stated unequivocally that the contracts would be terminated as of 4:50 p.m. absent a response and that the agreement would thereafter have no force and effect. The next day, December 15, Lone Star expressly *reaffirmed* not the agreements themselves, but its termination of them ("please be advised that in accordance with the ***notice of termination*** served upon you on December 14, 2015") while simultaneously asserting the right to specific performance. On December 16, in a letter it described as a "follow up" to the letter of the 15th, Lone Star said nothing whatsoever about retracting the notice of termination set forth in the December 15 letter (or the December 14 letters, for that matter). It referred instead to legal action "to protect [Lone

Star's] rights and interests under the Agreements," a statement that is not at all inconsistent with termination of the contract, as termination did not deprive Lone Star of remedies other than specific performance.[7] The proposed amended complaint, then, provides no factual basis to support Lone Star's argument that it retracted its termination of the agreement.

Nor does Lone Star provide any legal basis to support its retraction argument; it fails to identify any law supporting the proposition that simply ignoring a valid termination—and stating post-termination that one is "ready, willing, and able" to perform constitutes both "retraction" and "affirmance" that requires the other party to perform.[8] Therefore, the new legal theory of affirmance, on which the request to amend is based, is not plausibly supported by the proposed

---

[7] As the cases cited by Lone Star hold, however, nothing about its rightful termination prevents it from a "suit upon the contract *for damages*"). See Reply 5, ECF No. 65 (quoting *Schlotthauer v. Krenzelok*, 274 Wisc. 1, 4 (1956).

[8] In view of Lone Star's failure to allege facts that plausibly support its claim to have retracted its termination of the agreement, it is not necessary to address its arguments about the ability to subsequently affirm a contract that has been terminated. But it bears noting that none of the cases Lone Star cites—including its rather ancient authority from 1881—addresses the question squarely, and the proposition is dubious. As the Seventh Circuit held in *EraGen Biosciences, Inc. v. Nucleic Acids Licensing LLC*, 540 F.3d 694, 697 (7th Cir. 2008): "When a contract is terminated, even wrongfully, there is no longer a contract" (citing Florida and Illinois law). Thus, the Court explained, an act terminating a contract is fundamentally different from an act waiving a breach of contract: "If the contract was properly terminated, there is nothing left to waive (other than, perhaps, continued benefits under the contract, although one could also mitigate damages by accepting such benefits)." *Id.* Lone Star attempts to distinguish *EraGen* based up a case cited there, *Horwitz-Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1251 (7th Cir. 1996), which stated: "When a contract is terminated, even wrongfully, there is no longer a contract—'no contract'—no duty to perform and no right to demand performance, unless specific performance is sought, which it is not here; there is only a right to seek and a duty to pay damages caused by the termination." This dictum in fact underscores the Court's earlier explanation that specific performance is an alternative to damages. But it is not an available remedy in a case where a rightful termination preceded the demand for specific performance The appellate court's reference to specific performance does not assume that it comes after the termination; the quoted sentence says nothing of timing, and the facts of that case involved not a termination but a repudiation by one party in breach of its contractual obligations. *See id.* at 1250. But Lone Star terminated (it maintains) in accordance with its rights, and the assertion of remedies after justifiably terminating a contract is fundamentally different than "affirming" that contract. At least, Lone Star has cited no binding authority to the contrary.

11

amended complaint. Lone Star can, of course, sue for damages based upon the alleged breaches by BFC. But it has failed to show that specific performance of a rightfully terminated contract, the termination of which is simply ignored by the terminating party, is an available remedy.

Leave to amend need not be granted if it is clear that any amendment would be futile. *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). Here, the proposed Amended Complaint is not any more viable as a matter of law because it still seeks specific performance of a contract that the pleadings (and exhibits) reveal was terminated. There is a change in legal theory to the extent that the plaintiff emphasizes the lack of detrimental reliance by BFC and the supposed retraction of the termination and "affirmance" of the contract post-termination, but the core facts remain. Futile re-pleadings include those "restating the same facts using different language," "reasserting claims previously determined," "failing to state a valid theory of liability," and those with "the inability to survive a motion to dismiss." *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 970 (7th Cir. 1994). See also *Untermyer v. Coll. of Lake Cty.*, 284 F. App'x 328, 331 (7th Cir. 2008) (amendment properly denied as futile where it appeared "to plead essentially the same claim as the original complaint, minus the explicit references to [a statute]"); *Srivastava v. Newman*, 12 F. App'x 369, 373 (7th Cir. 2001) (affirming denial of amendment because "[n]one of [plaintiff's] proposed amendments would cure the legal insufficiency of her complaint."). Most if not all of the types of futility listed in *Garcia* are present here, given the Court's prior conclusions, and therefore amendment will not be permitted as to Count One.

Lone Star's motion for reconsideration and to amend it complaint is denied. Counts Two through Four of the original complaint[9] remain, and discovery on those counts should go forward under the continued supervision of Magistrate Judge Finnegan.

Date: October 26, 2016

John J. Tharp, Jr.
United States District Judge

---

[9] If Lone Star nevertheless wishes to file its Amended Complaint in service of Counts Two through Four, it will be permitted to do so. But Count One remains dismissed without leave to replead.